LEONARD FALCH *et al.*

*v.*

THE PEOPLE *ex rel.* Johnson, Collector.

*Filed at Ottawa May 14, 1881.*

1. SPECIAL ASSESSMENTS—*as to the mode of providing means to pay the cost of local improvements—constitutionality of the statute.* Section 9 of art. 9 of the constitution provides: "The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessments, or by special taxation of contiguous property, or otherwise." Section 1 of art. 9 of the act relating to "Cities and Villages" declares that by that act cities and villages are "vested with power to make local improvements by special assessments, or by special taxation, *or both,* of contiguous property, or general taxation, or otherwise, as they shall by ordinance prescribe." The language of the statute is substantially that of the constitution, and is not regarded as any broader in its effect and meaning.

2. Under the constitutional provision the legislature, in conferring power upon municipal corporations to make local improvements, is not restricted to any one of the modes prescribed in the constitution. It may direct that the cost of such improvements be paid in either mode specified in sec. 9, art. 9, of the constitution, and may by general law invest such corporations with all the power it possesses in that regard, to be exercised by ordinance, as shall be deemed best for the public interests involved.

3. Either method adopted for paying the cost of local improvements, by special assessments, by special taxation of contiguous property, or otherwise, will be lawful, if the ordinance providing for the same is not in conflict with the constitution or statute.

4. JURISDICTION—*as shown by finding of facts.* The finding of the court, in its order confirming a special assessment, that due notice, as required by law, was given, of the application, and of the making of the return of the assessment, and of the time for final hearing thereon, will be sufficient to show jurisdiction, where there is nothing in the record tending to show these jurisdictional facts were not correctly found.

WRIT OF ERROR to the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding.

Mr. EDWARD ROBY, for the plaintiffs in error:

The terms of sec. 9, art. 9, of the constitution, form a rigid limitation of the powers of the General Assembly. Citing *Nance* v. *Howard,* Bre. 244; *Updike* v. *Wright,* 81 Ill. 53; *Board of Directors* v. *Houston,* 71 id. 320; *Hinze* v. *The People,* 92 id. 419; *Sleight* v. *The People,* 74 id. 49; *Gage* v. *Graham,* 57 id. 146; *Harward* v. *St. Clair Drain. Co.* 51 id. 133; *Hessler* v. *Drainage Commissioners,* 53 id. 105.

When, in 1870, the people adopted the words "special assessment" to express an idea and method, it was well known what idea had been inculcated through a long line of decisions. *Adsit* v. *Lieb,* 76 Ill. 200; *Hill* v. *Higden,* 5 Ohio St. 247; *Weeks* v. *Milwaukee,* 10 Wis. 259; *The People* v. *Mayor of Brooklyn,* 4 N. Y. 440; *Taylor* v. *Palmer,* 31 Cal. 250; *Emery* v. *San Francisco,* 28 id. 345.

Special taxation of contiguous property for local improvements was as distinctly affirmed as a general power vesting in the legislative and executive departments. *Shaw* v. *Dennis,* 5 Gilm. 405; *Dennis* v. *Maynard,* 15 Ill. 477.

The word "otherwise," means by general taxation, or the exercise of the police power. Under the police power the roads and bridges have been built, and under it the militia and jurymen are called out. 1 Blacks. Com. 263, 357; 2 id. 357; *Trustees of Paris* v. *Berry,* 2 J. J. Marsh. 483; *Charter of*

*Lyons, etc.* v. *Henly,* 31 Ia. 31; *Mayor* v. *Mayberry,* 6 Humph. 368; *Washington* v. *Mayor,* 1 Swan, 177; *Whyte* v. *Mayor,* 2 id. 364; *Lowell* v. *Hadley,* 8 Metc. 180; *Goddard, petitioner,* 16 Pick. 508; *Howe* v. *Cambridge,* 114 Mass. 390; *Palmyra* v. *Morton,* 25 Mo. 596; *Johnson's Appeal,* 75 Pa. 96; *Lea* v. *Philadelphia,* 80 id. 315; *Carter* v. *Tide Water Co.* 3 C. E. Green, 68.

The constitutional provision requires the legislature to determine how each kind of local improvement shall be made, and to vest the municipal authorities of all the cities with power to make it in the way selected, whether it be by special assessment, or by special taxation, or otherwise. This will insure uniformity throughout the State. If it is a subject which could be considered by the legislature as to each city and town, special charters could be enacted; but the constitution of 1870 took away the power of the legislature to so discriminate. Art. 3, sec. 22, and art. 11, Const. 1870; *The People* v. *Cooper,* 83 Ill. 585.

The statute attempts to delegate to the corporate authorities of cities and villages that power which the General Assembly was commanded itself to exercise, and it goes further and allows these bodies to combine the methods in ways wholly unknown at the date of the constitution, or since. In this it violates both the letter and the spirit of the constitution.

If the statute is valid, the court failed to acquire jurisdiction to confirm the assessments, etc.

Mr. FRANCIS ADAMS, for the defendant in error:

The act of April 10, 1872, relating to cities and villages, is constitutional. It has been so held in the following cases: *The People* v. *Cooper,* 83 Ill. 551; *Lake* v. *City of Decatur,* 91 id. 596; *City of Bloomington* v. *Miller,* 84 id. 621; *White* v. *The People,* 94 id. 617.

Courts will not declare a statute void for unconstitutionality, unless its unconstitutionality is, in their judgment,

beyond reasonable doubt. A reasonable doubt must be solved in favor of the legislative action, and the act sustained. Cooley on Const. Lim. 182; *Lane* v. *Dorman et ux.* 3 Scam. 238; *The People* v. *Marshall,* 1 Gilm. 221; *People* v. *Auditor,* 30 Ill. 438; *The People* v. *Salomon,* 51 id. 49.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was an application by the county collector of Cook county, to the county court, for judgment against lands or lots owned by objectors, for the amount of special assessments against such lots for curbing, paving and grading Lincoln avenue, in the city of Chicago, from Centre street to Fullerton avenue, and for the usual order of sale. The assessment appears to have been made by the city under an ordinance passed in pursuance of the general authority conferred on all cities and villages by section 1, art. 9, of the act of the General Assembly, entitled "Cities and Villages," in force July 1, 1872. By the provisions of the ordinance the cost of the improvement was to be paid for by a special assessment to be levied upon the property benefited to the amount the same may be legally assessed, and the remainder of the cost to be paid by general taxation, in accordance with the general law in relation to the incorporation of "Cities and Villages." The assessment shows the lots in question were assessed to objectors as owners, and it appears such assessments were confirmed by the county court, which has jurisdiction for that purpose, the court reciting in its judgment: "It appearing to the court that the commissioners heretofore appointed to make said assessment have complied with all the requirements of the law as to posting and sending notices to the owners of the property assessed, and that due notice, as required by law, has been given of this application, and of the making and return of the said assessment, and of the time for the final hearing thereon, and no objection to said assessment having been filed, and no defence thereto made, it is ordered and adjudged by the court that a default be and, is hereby entered

against each and all the lots, blocks, tracts and parcels of land assessed and described in the said assessment returned and filed in this court, and that said assessment and all proceedings therein be and the same are hereby confirmed." The objectors having failed to pay the assessments made against the lots owned by them, on account of the local improvements required by the ordinance to be made, the county collector returned the same delinquent, that he might obtain judgment against them, and an order of sale, as against other delinquent lands and lots.

Only two objections were insisted upon in the court below, and none others are urged in this court:

*First*—That the statute under which the assessment was made (art. 9, chap. 24, Rev. Stat.) is unconstitutional and void.

*Second*—That if this statute is valid, the county court failed to acquire jurisdiction to enter the default against objectors, or either of them, or to enter judgment confirming the assessments against these lands by proof of notice and publication, as required by sections 27 and 28 of the same art. 9 of the act in relation to " Cities and Villages."

It is conceded, section 9, art. 9, of the constitution is a limitation on the powers of the General Assembly as to the taxing powers that may be conferred on municipal corporations.    That section declares:  "The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessments, or by special taxation of contiguous property, or otherwise."    In what respect section 1, art. 9, of the act in relation to " Cities and Villages " is in conflict with this provision of the constitution, is not perceived.    It follows, substantially, the language of the constitution, and declares that by this act cities and villages are " vested with power to make local improvements by special assessments, or by special taxation, or both, of contiguous property, or general taxation, or otherwise, as they shall by ordinance prescribe."    The statute is

no broader than the constitution, and no reason is perceived why it is not warranted by the provisions of that instrument.

The argument made against the constitutionality of this statute is extremely subtle, and has been elaborated at great length.    Counsel states, in the language of the constitution, the several methods in which power may be vested in cities and villages to make local improvements: first, by special assessments; second, or by special taxation of contiguous property; and, third, or otherwise; and upon which he bases his argument,—so much of which will be given in his own language as will make his position understood:  "Between the first and second methods the people made a marked distinction by inserting the words 'or by.'  Abstractly the words 'special assessment' mean any species of computation applied to · a particular end, and they might be used as synonymous with special taxation, but the words selected indicate that the terms are distinct and convertible.    The third division is otherwise than by special assessment, or by special taxation of contiguous property.    Those two distinct methods are excluded if resort is had to the third.    Methods sanctioned as due process of law, not forbidden by the principles scheduled in the constitution, and not traceable either to the power of special assessment or of special taxation, are comprised in the third division of delegated power.    The copulatives 'or by,' and 'or,' point to distinctions between the three, as to the origin or nature of the powers to be exerted, and the word *otherwise* is an exclusive word."    The error in the line of argument presented lies in the assumption the section of the constitution cited is a limitation upon the power of the General Assembly to vest municipal corporations with authority, by ordinance, to make local improvements by more than one of the methods designated in that section. This is not a correct construction of the constitution in this respect.    The General Assembly may direct that the costs of local improvements be paid in either mode specified in the constitution, and may, by general law, vest municipal corpo-

rations with all power it possesses in that regard, to be exercised by ordinance, as shall be deemed best for the public interests involved.   The precise question argued was raised and discussed in *White* v. *The People,* 94 Ill. 604.   It was there said, the framers of the constitution had omitted the former restrictive provision of uniformity in all municipal taxation, and had adopted the broad provision the General Assembly might vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessments, or by special taxation of contiguous property, or otherwise, without prescribing any rule on the subject, but leaving the General Assembly free to enact, from time to time, such laws on the subject as the interests of cities and villages throughout the State might require.   On turning to the statute it will be seen the legislature, by general law, has vested cities and villages with power to provide for the expense of constructing local improvements by special assessments, or by special taxation of contiguous property, or otherwise, and has left it with them to determine which mode shall be adopted, as they shall think just and equitable, under the circumstances. It follows, therefore, that either method adopted for paying the costs of local improvements, so that the ordinance that provides for the same is not in conflict with the constitution or statute, is lawful.   Conforming to this view of the law are other cases in this court: *Lake* v. *City of Decatur,* 91 Ill. 596; *The People* v. *Cooper,* 83 id. 585.

As respects the question made, as to want of notice to the owners of lots assessed for the proposed improvement to warrant the entering of a default against them and judgment of confirmation, it is apparent the record discloses enough to sustain the jurisdiction of the court.   Sections 27 and 28, of art. 9, prescribe what notice shall be given in cases of special assessments to parties concerned, and provides how the same shall be served.   The order of confirmation made by the county court finds that due notice, as required by law, was given, of the application, and of the making and the return of

the assessment, and of the time for final hearing thereon, and there is nothing in this record to show, or that tends to show, these jurisdictional facts were not correctly found by the court.

It is said, it appears the notice was published on Sunday, November 2, 1879, and as that day is *dies non juridicus*, it is void, and if that day be omitted, the notice was not published for the requisite length of time. There is nothing in this record that shows affirmatively the publication was in fact made on Sunday. The certificate of the publisher is, it was published five times,—the date of the first paper in which the notice was published was October 30, 1879, and the date of the last paper containing the same was November 4, 1879. Excluding Sunday, the notice was published five days, and that is all the law seems to have required.

The affidavit of notice to the owners of lots or lands assessed, conforms to the statutory requirements, and is wanting in no essential particular that is perceived. It could not have been made fuller or more definite without useless prolixity.

Perceiving no material error in the record, the judgment will be affirmed.

*Judgment affirmed.*