# CASES

ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

PHILADELPHIA AND READING COAL AND IRON CO. *et al.*

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa October 11, 1895.*

1. PUBLIC IMPROVEMENTS—*failure to file remanding order in special assessment proceeding—second assessment.* Failure for two years to file a remanding order reversing a judgment confirming a special assessment does not, under section 84 of the Practice act, constitute an abandonment of the condemnation, but only of the previous assessment; and the right to levy another assessment for the street extension survives without a new ordinance.

2. SAME—*payment of assessment subsequently set aside—re-assessment.* The payment of an illegal assessment for a public improvement, which is subsequently set aside on appeal by other owners, will not, under section 46, article 9, of the City and Village act, relieve a land owner from paying the balance of an increased re-assessment, after applying the amount formerly paid.

3. SAME—*competency to act as commissioner—testifying as expert.* It does not disqualify one to act as commissioner to make an assessment for a street improvement, as to a particular piece of land, that upon a trial on a former assessment roll for the same improvement he testified as an expert witness as to the effect of the improvement on other property.

4. SAME—*presumed that court appointed competent commissioners.* It will be presumed that the court performed its statutory duty to appoint three competent persons as commissioners to make an assessment for the opening of a street.

5. SAME—*presumed that street to be opened is within city.* It will be presumed that a street, for the opening of which an ordinance has been passed by a city, is within the city limits.

6. SAME—*separate jury trials are proper in special assessment.* There may be separate jury trials, and separate final judgments as to different property owners, upon the same assessment roll for the opening of a street.

7. EVIDENCE—*competency of assessment roll upon re-assessment.* That the asssessment roll for the opening of a street, made upon a re-assessment after the original assessment has been declared void, includes a sum as costs in excess of that included as costs in the original assessment, does not render it incompetent evidence under the statute, where it is not suggested that it is too large, or includes any improper items of costs.

8. SAME—*city may prove subsequent building of bridge connecting with street opened.* Upon the trial of issues as to the amount of benefits from opening a street, evidence of the subsequent building of a bridge by the city, connecting with such street, is competent, where the benefits to the property will largely depend upon the existence of such bridge.

9. APPEALS AND ERRORS—*allowing joint appeal—discretion of trial court.* It will be presumed, on appeal, that the discretion of the trial court as to allowing a joint appeal to all objectors to an assessment for a street opening was properly exercised.

10. SAME—*who may object to denial of joint appeal.* Objectors to an assessment cannot complain that all the other objectors were not allowed to join in their appeal, where they have had a review of the record so far as applicable to their own property.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

ULLMANN & HACKER, for appellants:

The statute provides that "upon the filing of such petition the court shall appoint three competent persons as commissioners." Huling, who had been a witness to sustain the former assessment, was not a competent person. *Cole* v. *Peoria*, 18 Ill. 301; *Hunt* v. *Chicago*, 60 id. 183; *Shreve* v. *Town of Cicero*, 129 id. 226.

The judgment referred to was reversed March 29, 1890. No remanding order having been filed within two years, the cause stands abandoned, under the statute.   *Koon* v. *Nichols,* 85 Ill. 155.

A new suit being necessary, as we see no difference, in principle, between this and any other civil suit, the petitioner should begin *de novo,*—not come into the same proceeding.   *Guild* v. *Chicago,* 82 Ill. 482 ; *Goodwillie* v. *Lake View,* 137 id. 51.

The case at bar is not like *Pardridge* v. *Hyde Park,* 131 Ill. 537, for in that case the first assessment roll was never confirmed.   The former owners of this property paid the assessment under the first roll, and this should have discharged the land from any further burden, unless proper steps were taken to collect a deficiency.   *Union Building Ass.* v. *Chicago,* 61 Ill. 439.

The municipal authority, under the guise of a supplemental assessment, cannot impose upon the property assessed a greater burthen than the benefits accruing to it. *Greeley* v. *Town of Cicero,* 148 Ill. 632.

WALTER L. FISHER, and HARRY RUBENS, Corporation Counsel, for appellee :

"A personal pecuniary interest" must be shown in order to disqualify a commissioner.   *Pearce* v. *Hyde Park,* 126 Ill. 293 ; *Hunt* v. *Chicago,* 60 id. 184; *Shreve* v. *Town of Cicero,* 139 id. 226.

That no new ordinance for opening this street was necessary, see *Pardridge* v. *Hyde Park,* 131 Ill. 537.

When the old assessment was annulled and set aside, those who had previously paid thereupon became entitled to recover back from the city the full amount they had paid under the proceedings which were thus abandoned. *Union Building Ass.* v. *Chicago,* 61 Ill. 439.

The city concedes that this money must be paid back or applied on the new assessment.   *Bradford* v. *Chicago,* 25 Ill. 349.

Mr. JUSTICE BAKER delivered the opinion of the court:

On April 9, 1886, the city of Chicago filed a petition in the Superior Court of Cook county to condemn certain property therein described, for the purpose of opening and extending South Canal street from Lumber street to Archer avenue, in pursuance of an ordinance passed by the council of said city March 15, 1886. The property was condemned, and a judgment for $178,271.98 was entered. A supplemental petition was filed in said court February 9, 1887, asking for an assessment on the property benefited, to raise the money necessary to pay the compensation awarded by the condemnation judgment. Commissioners were appointed. It was found that $183,-316.18 was the amount to be raised, and an assessment roll was returned into court. Various property owners, including one of the two appellants in this case, (the Lehigh Valley Coal Company,) filed objections to this assessment, and after a trial, which resulted in confirming the assessment, they appealed to this court. The judgment of confirmation was reversed on March 29, 1890, and the cause remanded. The ground of reversal was, that benefits were assessed on the theory of the construction of a bridge across the south branch of the Chicago river, on the line of the street extension, whereas, in fact, no bridge had been built, or ordered to be built, or provided for in the ordinance. (*Hutt* v. *City of Chicago*, 132 Ill. 352.) In the meantime the property owners who had not appealed had paid their assessments. The city thereupon ordered the construction of the bridge, and it was finally built, and paid for by general taxation. No transcript of the remanding order or mandate of this court was filed in the trial court within the statutory period of two years. Rev. Stat. chap. 110, sec. 84.

After the completion of the bridge the city council of Chicago annulled the old assessment, and ordered steps to be taken to have a new assessment made to raise the

amount already awarded in the condemnation judgment, and on January 9, 1894, an order was entered in the Superior Court finding that the city council had annulled the first assessment and directing the same to be set aside, and also setting aside and dismissing various subsequent proceedings, and giving leave to file a new supplemental petition.   Thereupon a new supplemental petition was filed.   The court estimated the costs of the original condemnation suit proper (not including those of the former special assessment) and of the new assessment, and appointed new commissioners to levy an assessment *de novo*, and directed them to assess upon the property benefited the amount of the condemnation award, $178,271.98, together with the estimated costs of the proceedings.   A new assessment roll was returned into court.   Appellants interposed various objections to the confirmation of this new assessment upon their properties.   These objections were all held untenable, and the result of the hearing of the questions of law before the court and of the questions of fact before a jury was, that the new assessment was confirmed, and from the judgment of confirmation this appeal was taken.

The two appellants, the Philadelphia and Reading Coal and Iron Company and the Lehigh Valley Coal Company, stand before the court in somewhat different attitudes.   The former owners of the property now belonging to the first mentioned corporation voluntarily paid the first assessment made thereon, amounting to $2500.   On the other hand, the other appellant, the Lehigh Valley Coal Company, was one of the numerous appellants in the old special assessment case of *Hutt* v. *City of Chicago, supra,* wherein the judgments for the assessments were reversed, and it has never paid any assessment on the property it owns. Therefore some of the questions at issue are raised by the first named appellant, some by the other, and some by both.

Prior to the trial before the jury the Lehigh Valley Coal Company made a motion, which was denied, that the proceedings be dismissed as to it because judgment of confirmation was entered in 1889, which was reversed in 1890 by the Supreme Court, and no remanding order was filed within two years thereafter. The contention is, that by force of the premises the cause stands abandoned under the statute, and a new suit is necessary, which must begin anew at the starting point, by the passage of a new ordinance authorizing a special assessment to raise the money necessary to pay for the property taken, to be followed by a new condemnation proceeding, and new award of compensation and damages for property taken or damaged, and culminating in a new assessment of special benefits.

The statute is, that if neither party shall file a transcript of the remanding order within two years "the cause shall be considered as abandoned, and no further action shall be had therein." (Practice act, sec. 84.) In *Koon* v. *Nichols*, 85 Ill. 155, this court said : "The word 'cause' here means the particular suit in which the order is made,—not that the cause of action shall be considered as abandoned, but only that such particular suit shall be considered as abandoned and no further action shall be had therein." A suit is an action or process for the recovery of a right or claim. The particular suit that was abandoned was the claim made by the city to recover the benefits that had before that time been assessed against the property of the appellants in the *Hutt case.* The pleading in that particular suit was the supplemental petition, and that, of course, was abandoned, so far as the then appellants were concerned, by the failure to file the mandate. It was a particular suit that was ancillary to the condemnation case or proceeding. But the condemnation case was not abandoned. It had not been appealed from. Presumably, both the city and those whose property was taken or damaged were satis-

fied with the awards made therein. It was not the particular suit in which the order of reversal was made. The right to levy an assessment for the extension of the street, as determined in the condemnation proceeding already had, unquestionably survived. That right was, and is, the cause of action, and under the statute and the decision cited the cause of action was not abandoned. As was said by us in *Goodwillie* v. *City of Lake View*, 137 Ill. 51 (p. 62): "Although a supplemental petition is filed in the condemnation proceeding, the relief sought thereby is supplemental and collateral to the proceeding in which the judgment of condemnation was rendered, and the questions arising in the original proceeding can not be re-litigated upon the supplemental petition. It is for a distinct, separate purpose,—that is, to raise funds to pay the judgment already entered." It is true, the supplemental petition is filed "in the same proceeding;" but this is a mere matter of convenience, and is done only by virtue of a direct authority given by the statute. (Chap. 24, art. 9, sec. 53.) And although this court, in *Guild* v. *City of Chicago*, 82 Ill. 472, says, "this assessment was in the same proceeding," yet it also there speaks of "the original petition in the condemnation proceeding" and "the supplemental petition in the assessment proceeding." This was because there were two distinct and particular suits or proceedings, but joined or yoked together, as we have seen, simply for purposes of convenience.

That after the reversal and remandment and failure to file the mandate in the *Hutt case* the original ordinance was still in force when this new supplemental petition was filed, in January, 1894, and no new ordinance for the opening of the street was necessary, is clearly deducible from the decision of this court in *Pardridge* v. *Village of Hyde Park*, 131 Ill. 537.

There was no error in overruling the motion of the Lehigh Valley Coal Company to dismiss this proceeding as to it.

The Superior Court also denied the motion of the Philadelphia and Reading Coal and Iron Company to dismiss the proceeding as to it upon the ground that the former owners of its property voluntarily paid $2500,— the assessment levied against said property for said improvement in the former assessment roll. In the new assessment roll the property is assessed $3150. The contention of the company is, that the payment already made discharged the land from any further burden, unless proper steps were taken to collect a deficiency, and that the old assessment, with the fact of its payment, is a bar to the new assessment. The city claims that the new supplemental petition, and the assessment based thereon, are a proceeding *de novo*, in which the commissioners act without reference to the original supplemental petition and first assessment. It concedes, however, that the $2500 paid must be applied on the new assessment to the credit of the particular property for which it was paid, and that the property will only have to pay the difference of $650.

Section 46 of article 9 of the City and Village act provides as follows: "If any assessment shall be annulled by the city council or board of trustees, or set aside by any court, a new assessment may be made and returned, and like notice given and proceedings had as herein required in relation to the first; and all parties in interest shall have the like rights, and the city council or board of trustees and court shall perform like duties, and have like power in relation to any subsequent assessment, as are hereby given in relation to the first assessment." This section makes provision for the annullment of an assessment by a city council or village board of trustees. There may be contingencies in which such an act is eminently and unquestionably advisable and proper. If there was an assessment of $100,000, and $5 had voluntarily been paid thereon, and it was definitely and certainly ascertained that the assessment was for some

reason invalid, the exercise by the municipality of the power to annul would manifestly be authorized. And this section in substance provides that if any assessment is annulled by the city council or set aside by any court, a new assessment may be made and returned under the general provisions in regard to special assessments, and just as if no prior assessments had ever been made. The section has no reference to a deficiency assessment, for special provision is made for that in section 47; and it has no reference to a new assessment against delinquents, for special provision is made for that in section 48.

In *Union Building Ass.* v. *City of Chicago,* 61 Ill. 439, there was involved a proceeding under a section of the special charter of the city, but the court there used language which is in point here. This court said (p. 447): "The effect of the statute authorizing a new assessment is, that the same shall be made, as nearly as may be, in the same manner as is prescribed for the first assessment. It must in all cases be a *de novo* proceeding. Its departure from the precise mode of making the first assessment can be justified only so far as may be required by the circumstances of each case. Where no payments have been made, and from the circumstances of the work the amount of the costs and expense rests upon estimates alone, then it must be made in all respects like a first assessment. But when payments have been voluntarily made under the original, in whole or in part, then although such original assessment may be void, still the payments must be allowed to apply. If in full, they operate to discharge the land in respect to which they were made; if partial, they are a discharge *pro tanto.*" (See, also, *Bradford* v. *City of Chicago,* 25 Ill. 411.) In *Falls* v. *City of Cairo,* 58 Ill. 403, Falls was not allowed to recover back special assessments voluntarily paid, but that was upon the ground that the improvement had been in fact made, and it was considered that the plaintiff had received a full equivalent or compensation for the money paid, in the enhanced

value which his property had derived from the improvement.

There was a further motion by the Philadelphia and Reading Coal and Iron Company,—*i. e.*, a motion to set aside the assessment roll because Edward C. Huling, one of the commissioners, was examined as an opinion witness for the city at the trial upon the former assessment roll.   We find no evidence or admission in the record that Edward C. Huling testified at that trial.   Besides this, the property of the coal and iron company was not involved in that trial, for its then owners filed no objections, but voluntarily paid the assessment.   Huling, therefore, was not a witness as to the effect of the improvement upon the property of said company.   The statute required the court to appoint three competent persons as commissioners to make the assessment, and the presumption must be that the court performed its duty in that regard.

*Hunt* v. *City of Chicago*, 60 Ill. 183, and *Shreve* v. *Town of Cicero*, 129 id. 226, are not here in point   In each of those cases the claim was that one of the commissioners owned property that was to be specially assessed, and had a pecuniary interest in making the assessment.   Here it does not appear that Huling had any personal or pecuniary interest in the matter of this assessment.   (*Pearce* v. *Village of Hyde Park*, 126 Ill. 287.)   Nor can *Cole* v. *City of Peoria*, 18 Ill. 301, be regarded as an authority that is applicable here.   That case arose under a statute where the commissioners were, in effect, arbitrators, and there was a right to appear before them with witnesses.   The commissioners prejudged the case of the appellant, and one of them had announced to him and to others that it would be useless for him to bring any witnesses, and that no testimony offered would make any difference, as the commissioners had made up their minds.   Here the most that can be surmised is, that Huling, at the hearing upon the old assessment, may have testified to his opinion that the assessment then under consideration was just and

fair, so far as the property of certain designated persons, other than appellants or their grantors, was concerned. The statute (sec. 33) goes so far as to expressly authorize the court, where an assessment has been found not to be true and just, to cause it to be re-cast by the same commissioners who made the objectionable assessment.

We think there was no error in denying either of the two preliminary motions that were made by the Philadelphia and Reading Coal and Iron Company.

It is objected by the appellants that the ordinance upon which the assessment is based fails to show that the proposed improvement is within the limits of the city of Chicago. It will be presumed that it is so located. *Stanton* v. *City of Chicago*, 154 Ill. 23; *Meadowcroft* v. *People*, id. 416.

It is objected that there were two jury trials and at least four separate final judgments on the same assessment roll, and that the court had exhausted its powers by the entry of the first final judgment. This claim is decided adversely to the contention of appellants in *Browning* v. *City of Chicago*, 155 Ill. 314, and numerous other cases.

It is claimed that the assessment roll was not competent evidence against appellants, because the sum included as costs was largely in excess of the sum included as costs in making the original assessment. The statute expressly provides that on the hearing the report of the commissioners shall be competent evidence. (Sec. 31, art. 9, chap. 24.) It is not suggested that the last estimate made is too large, or that it includes any items of cost that ought not to have been included.

It is claimed that the evidence of one Roemheld was inadmissible, because the only issues before the jury were whether or not the property of the objectors was assessed more or less than it would be benefited, or more or less than the proportionate share of the cost of the improvement. The extent to which the property would be bene-

fited would largely depend upon the fact whether or not there was a bridge across the south branch of the Chicago river on the line of the street extension. It was competent, therefore, to show that the city had built a bridge there, and the matter of this evidence was so limited as that the jury would understand that the erection of the bridge itself was not the basis of any claim for benefits.

A claim is made that the evidence did not make out a case of special benefits, as a question of fact. The report of the commissioners was competent evidence, and made out for the city a *prima facie* case of benefits, and when the evidence is regarded as a whole it amply sustains the assessments made against the properties of the appellants.

It is urged, finally, that the court erred in denying a joint appeal to all the objectors, as prayed for. This was largely a matter of discretion with the trial court, and the presumption is that it was properly exercised. There seem to have been quite as many attorneys engaged in the trial of the objections as there were different property owners, and the defense of each property owner seems to have been made on his or its own theory of the law and fact that was applicable to him or it. At all events, these two defendants prayed for, obtained and perfected this their joint appeal, and thereby have had the benefit of a review of the record made below, so far as it is applicable to their property.

We find no error. The judgment of confirmation is affirmed.                              *Judgment affirmed.*